# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

MAYNOR DAVID CASALEGNO-ESCOBAR

No. 2:25-mj-00133-KFW

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Scott M. Hanton, Border Patrol Agent of the United States Border Patrol, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Border Patrol Agent-Intelligence with the United States Border Patrol ("USBP"), currently assigned to the Houlton Sector Intelligence Unit in Hodgdon, Maine. I have been an agent with the USBP since November 29, 2010. I completed the USBP Academy in February of 2011, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received training in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States. In the course of my employment with USBP, I have been assigned to the Highway 90 and Highway 80 immigration checkpoints in Arizona, where I was the primary agent for multiple narcotic and human smuggling cases.

2. From March 2020 to August 2022, I was assigned as a Case Agent for the Tucson Sector Prosecution Unit. I have conducted numerous criminal investigations involving illicit activity and have gathered and structured evidence and facts pertaining to administrative and criminal immigration cases. In the course of my duties, I have taken sworn statements from material witnesses and suspects. I routinely perform

record checks through various law enforcement databases to establish accuracy of information as well as to gather facts further relevant to a respective case. I have acted as a liaison between the United States Attorney's Office and field agents, and I have assisted fellow agents in the development of their cases. I am currently assigned collateral duty as a Houlton Sector Prosecutions Case Manager.

3. I make this affidavit in support of a Criminal Complaint charging MAYNOR DAVID CASALEGNO-ESCOBAR with one count of Illegal Re-Entry of Alien After Deportation, in violation of Title 8, United States Code, Section 1326(a). The information contained in this affidavit is based on my review of reports prepared by other law enforcement officers and conversations with involved personnel, as well as my training and experience as a prosecution case agent.

## STATEMENT OF PROBABLE CAUSE

4. On April 10, 2025, a Border Patrol Agent-Resident Agent (BPA-RA) Derek Wilcox, assigned to the Calais Border Patrol Station was conducting assigned patrol duties near Portland, Maine. Border Patrol Agents-Intelligence (BPA-I) Nathan Parker and Mario Gonzalez were conducting surveillance of a residence located at 24 Devonshire Street in Portland, Maine. At approximately 6:30 AM, BPA-RA Wilcox was notified by a BPA-I Parker that a positive identification had been made of a subject (Maynor David CASALEGNO-ESCOBAR) exiting a White Ford Edge bearing Maine registration 5476 ZF.

5. BPA-I Parker had observed the same Ford Edge at 24 Devonshire Street on multiple occasions previously and had conducted records checks on the vehicle registration number 5476 ZF. Record checks revealed the registered owner of the Ford Edge to be CASALEGNO-ESCOBAR. BPA-I Parker conducted immigration checks

through Customs and Border Protection systems which revealed that CASALEGNO-ESCOBAR was a citizen of Honduras and had been previously ordered removed from the United States two times previously and was currently illegally present in the United States. BPA-I Parker was also able to collect photographs of CASALEGNO-ESCOBAR from previous encounters with the United States Border Patrol and Immigration and Customs Enforcement that matched the subject of the driver of the Ford Edge.

6. BPA-I Parker advised the BPA-RA Wilcox of the subject's clothing description via the service radio. BPA-I Parker stated the subject was wearing a black hoodie sweatshirt, blue jeans, and a dark colored winter hat. Moments later, BPA-I Parker observed CASALEGNO-ESCOBAR entering the driver's side door of a White Ford E250 van bearing Maine commercial registration 3D2875. At approximately 6:33 AM, BPA-I Parker advised that he had observed the van leave 24 Devonshire St and turn onto Noyes Street, travelling toward Forrest Avenue.

7. At the time, BPA-RA Wilcox was located nearby on Dartmouth Street observing traffic. BPA-RA Wilcox proceeded to Noyes Street and observed a White Ford E250 bearing Maine commercial registration 3D2875 travelling towards Forrest Avenue. As the van arrived at the intersection of Noyes Street and Forrest Avenue, the driver stopped at the stop sign and got out of the vehicle. BPA-RA Wilcox recognized the driver as CASALEGNO-ESCOBAR from a photo obtained through prior investigative research. BPA-RA Wilcox observed that he was wearing a black hoodie sweatshirt, blue jeans, and a dark colored knit cap as described by BPA-I Parker. BPA-RA Wilcox activated the emergency lights on his marked service vehicle at approximately 6:35 AM to conduct a traffic stop. Upon seeing the emergency lights, CASALEGNO-ESCOBAR got back into the driver's seat and closed the door.

8. BPA-RA Wilcox approached the driver's side of the vehicle and identified himself as a Border Patrol Agent in the English language. BPA-RA Wilcox observed the driver lock the doors of the vehicle. BPA-RA Wilcox asked the driver to open the window. He did not comply. BPA-RA Wilcox then identified himself in the Spanish language and ordered the driver to open the window. He still did not comply. BPA-I Gonzalez d the passenger side of the vehicle and issued the passenger commands to open the window. Both agents issued several more commands to open the window and BPA-RA Wilcox advised the driver that if he did not open the window, he would break it. Both occupants continued to ignore commands. At approximately 6:36 AM, BPA-RA Wilcox broke the driver's side window and was able to open the driver's door by reaching into the vehicle. BPA-RA Wilcox then removed CASALEGNO-ESCOBAR from the vehicle and placed him in handcuffs. CASALEGNO-ESCOBAR was apprehended at approximately 6:37 AM.

9. BPA-I Gonzalez read CASALEGNO-ESCOBAR his Miranda Rights. BPA-RA Wilcox conducted facial recognition checks via Mobile Query which confirmed CASALEGNO-ESCOBAR's identity. CASALEGNO-ESCOBAR was then transported to the Area Port of Portland for processing. BPA-I Gonzalez remained with the vehicle until it was towed by A&T Towing.

10. At the Area Port of Portland, CASALEGNO-ESCOBAR was provided with his advisement of his Miranda rights via Form I-214 in the Spanish language. CASALEGNO-ESCOBAR verbally acknowledged and stated that he understood his rights. CASALEGNO-ESCOBAR freely and voluntarily waived his rights and was willing to make a statement to agents.

11. In a Sworn Statement, post-Miranda, CASALEGNO-ESCOBAR stated that he last entered the United States in March of 2020. CASALEGNO-ESCOBAR stated had been previously removed from the United States two times before the date of this incident. CASALEGNO-ESCOBAR admitted that he did not receive permission from the U.S. government to re-enter the United States. CASALEGNO-ESCOBAR was notified of his rights to communicate with a consular officer from his respective country.

12. CASALEGNO-ESCOBAR was notified of his rights to communicate with a consular officer from his respective country. CASALEGNO-ESCOBAR acknowledged he understood the right; but declined to speak with a consular officer at this time. CASALEGNO-ESCOBAR stated that he does not fear persecution or torture if returned to Honduras.

13. A review of immigration records checks showed that on about June 4, 2018, the Defendant was removed from the United States through the Valley International Airport to Honduras, pursuant to an Order of Removal dated May 27, 2018. After his initial removal, he has illegally reentered the United States without proper authorization. On about January 4, 2021, he was removed from the United States from the point of entry of Alexandria, Louisiana to Honduras, pursuant to a final order dated January 13, 2019, reinstating the original order of removal. There is no record of CASALEGNO-ESCOBAR requesting relief from the United States Attorney General that would allow his re-entry at any point, including since the date of his most recent removal.

## CONCLUSION

I respectfully submit, based on the facts set forth above, that probable cause exists to charge CASALEGNO-ESCOBAR, by Criminal Complaint with the offense of Illegal Re-Entry After Deportation, in violation of Title 8, United States Code, Section 1326(a), and I respectfully request that the accompanying Criminal Complaint be issued.

Scott Hanton
Border Patrol Agent
U.S. Border Patrol

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Apr 14 2025

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title